**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT NEW JERSEY**

| | |
|---|---|
| BRIAN WILLIAMS, *individually, and on behalf of all others similarly situated,* Plaintiff, v. QUEST DIAGNOSTICS INCORPORATED, Defendant. | Case No. _________ **CLASS ACTION COMPLAINT** JURY TRIAL DEMANDED |

Plaintiff Brian Williams, by and through his undersigned counsel, on behalf of himself and a class of all other similarly situated persons, files this Class Action Complaint against Quest Diagnostics Incorporated ("Quest" or "Defendant") and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities. Plaintiff's allegations are made based upon information and belief, based on the investigation of counsel, except as to those allegations that specifically pertain to Plaintiff, which are based upon personal knowledge .

## I. NATURE OF THE ACTION

1. Mr. Williams brings this class action against Quest for its failure to properly secure his and Class Members' personally identifiable information ("PII")

and protected health information ("PHI") (collectively, "Private Information") that was compromised in a breach of Quest's information technology network (the "Data Breach").

2. Mr. Williams has been, and continues to be, harmed by Quest's failure to properly secure and safeguard his highly valuable Private Information.

3. Defendant Quest is a clinical laboratory and diagnostic information services company. "Every year, Quest serves 1 in 3 adult Americans and half the physicians and hospitals in the US."[1] Quest reported approximately $11 billion in revenue in 2025.

4. In its regular business operations, Quest collects and stores a substantial amount of Private Information. Quest has a resulting duty to ensure the Private Information it maintains is safeguarded from unauthorized disclosure.

5. Mr. Williams and the individuals impacted by the Data Breach provided their Private Information to Quest either directly or indirectly in connection with the services Quest provides.

6. Quest recently experienced a significant cybersecurity incident involving unauthorized access to its information technology network (the "Data

[1] Quest Diagnostics, About Us, *available at* https://www.questdiagnostics.com/our-company/about-us.

Breach”). The Data Breach resulted in the compromise and exfiltration of highly sensitive identification information belonging to Mr. Williams and Class members.

7. Upon information and belief, cybercriminals were able to breach Quest’s systems because Quest failed to adequately train its employees on cybersecurity, failed to adequately monitor its agents, contractors, vendors, and suppliers in handling and securing the Private Information of Plaintiff and Class members, and failed to maintain reasonable security safeguards or protocols to protect Mr. Williams’ and Class members’ Private Information, rendering it an easy target for cybercriminals.

8. Despite having first learned of the Breach on October 21, 2026, Quest has failed to promptly notify Plaintiff or Class members about the Data Breach.

9. As a direct and proximate result of the Data Breach, Plaintiff and Class members have suffered actual and present injuries, including but not limited to: (a) present, impending, and continuing threats of identity theft crimes, fraud, scams, and other misuses of their Private Information; (b) diminution of value of their Private Information; (c) loss of benefit of the bargain (price premium damages); (d) loss of value of privacy and confidentiality of the compromised Private Information; (e) illegal sales of the compromised Private Information; (f) mitigation expenses and time spent responding to and remedying the effects of the Data Breach; (g) identity theft insurance costs; (h) “out of pocket” costs incurred due to

actual identity theft; (i) credit freezes/unfreezes; (j) expense and time spent on initiating fraud alerts and contacting third parties; (k) decreased credit scores; (l) lost work time; and (m) anxiety, annoyance, and nuisance; (n) continued risk to their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff's and Class members' Private Information.

10. Mr. Williams brings the following claims against Quest on his own behalf and on behalf of all similarly situated persons: negligence, unjust enrichment, and breach of implied contract.

11. He seeks damages and injunctive relief, including the adoption of reasonably sufficient data security practices to safeguard the Private Information still in Defendant's possession to prevent incidents like the Data Breach from reoccurring in the future.

## II. PARTIES

12. Plaintiff Brian Williams is a citizen and resident of the State of California, where he intends to remain. He is a Quest customer.

13. Defendant Quest is a Delaware corporation with its principal place of business located at 500 Plaza Drive, Secaucus, New Jersey 07094.

## III. JURISDICTION AND VENUE

14. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d), because (i) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs (ii) the action is a class action (iii) there are Class members who are diverse from Defendant, namely Plaintiff a citizen of California and (iv) there are more than 100 Class members.

15. This Court has general personal jurisdiction over Quest because Quest maintains its principal place of business in this District.

16. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Quest resides in this District.

## IV. FACTUAL ALLEGATIONS

### A. Defendant's Business

17. Quest is a clinical laboratory and diagnostic information services company.[2]

18. In the ordinary course of its business, Quest collects and maintains the Private Information belonging to the current and former customers that is then, upon information and belief, stored on Quest's computer systems or systems that Quest controls.

---

[2] Quest Diagnostics, About Us, *available at* https://www.questdiagnostics.com/our-company/about-us.

19. Upon information and belief, Quest made express and implied promises to maintain the confidentiality of Plaintiff's and Class members' Private Information, comply with applicable federal and state laws and regulations, and refrain from using or disclosing such information for non-essential purposes.

20. Quest acknowledges that it is required by law to maintain the privacy of Plaintiff's and Class members' PHI.[3]

21. Quest represents in its Privacy Statement that it has "adopted physical, technical and administrative measures that are designed to prevent unauthorized access or disclosure, maintain data accuracy, and ensure appropriate use of Personal Information."[4]

22. Plaintiff and Class members are individuals who provided their Private Information to Quest either directly or indirectly.

23. Plaintiff and Class members have taken reasonable steps to maintain the confidentiality of their Private Information. Plaintiff and Class members relied on the sophistication of Quest to keep their Private Information confidential and securely maintained, to use this information for necessary purposes only, and to

---

3 *HIPAA notice of Privacy Practices*, Quest Diagnostics Incorporated, https://www.questdiagnostics.com/our-company/privacy/notice-of-privacy-practicesa (last visited Oct. 26, 2026).

4 *Privacy*, Quest Diagnostics Incorporated, https://www.questdiagnostics.com/our-company/privacy (last visited Oct. 26, 2026).

make only authorized disclosures of this information. Plaintiff and Class members value the confidentiality of their Private Information and demand security to safeguard their Private Information.

24. Quest had a duty to adopt reasonable measures to protect the Private Information of Plaintiff and Class members from involuntary disclosure to third parties. Defendant had a legal duty to keep this Private Information safe and confidential.

25. Quest had obligations created by the Federal Trade Commission Act ("FTC Act"), various federal and state statutes, contract, and industry standards to keep such Private Information confidential and to protect it from unauthorized access and disclosure.

26. Thus, Plaintiff and Class members had a reasonable expectation that Quest would comply with its obligations related to Plaintiff's and Class members' Private Information. Quest owed Plaintiff and Class members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their Private Information.

27. By obtaining, collecting, using, and deriving a benefit from Plaintiff's and Class members' Private Information, Quest assumed legal and equitable duties

and knew or should have known that it was responsible for protecting Plaintiff's and Class members' Private Information from disclosure.

**B. The Data Breach**

28. Defendant recently experienced a significant cybersecurity incident involving unauthorized access to its information technology network (the "Data Breach"). The Data Breach resulted in the compromise and exfiltration of highly sensitive Private Information entrusted to Quest, either directly or indirectly, by Plaintiff and Class members.

29. In a Form 8-K filing with the SEC, Quest reported that on October 21, 2026, Quest learned of unauthorized access to its Quanum Lab Services Manager ("LSM") system, which certain Quest clients use to place test orders and to receive and look up results. Quest believes that an unauthorized party accessed patient records.[5]

[5] *Form 8-K*, Quest Diagnostics Incorporated, United States Securities and Exchange Commission (Oct. 21, 2026), *available at* https://www.sec.gov/ix?doc=/Archives/edgar/data/1022079/000094787126000941/ss6979200_8k.htm

30. In response, Quest launched an investigation to determine the nature and scope of the Data Breach and determined that Private Information was accessed.[6]

31. Currently, the precise number of persons injured is unclear. But upon information and belief, the size of the putative Class can be ascertained from information in Defendant's custody and control. The Class is so large that joinder of all members is impracticable. Upon information and belief, given that Quest serves half the physicians and hospitals in the United States and one in three American adults each year, and that Quest's clients use the Quanum LSM system to place test orders and to receive and look up test results, there are at least thousands of individuals whose Private Information was improperly accessed in the Data Breach, and each Class member is identifiable from Quest's records.

32. Despite having first learned of the Breach on October 21, 2026, Quest has failed to promptly notify Plaintiff or Class members about the Data Breach.

33. Upon information and belief, despite its duties to safeguard the sensitive information entrusted to it and any representations or commitments it

---

[6] Quest Diagnostics, An update on an incident involving one of our systems (8:00 am ET, Oct. 26, 2026), *available at* https://www.questdiagnostics.com/links/quanum-notice

made concerning the security of that information, Quest failed to implement and maintain reasonable and appropriate safeguards to protect Plaintiff's and Class members' information from unauthorized access and acquisition.

34. Quest's failure to prevent or detect the Data Breach permitted cybercriminals to obtain and exfiltrate highly sensitive identification information belonging to Plaintiff and Class members.

35. The volume and sensitivity of the information allegedly accessed and exfiltrated supports the inference that Quest's security measures were inadequate.

36. As a direct and proximate result of Quest's failures, Plaintiff and Class members have lost control over sensitive identification information that they reasonably entrusted to Quest and have been exposed to an ongoing and heightened risk of identity theft, fraud, impersonation, and other misuse of their information.

**C. Defendant Acquires, Collects, and Stores Plaintiff's and Class Member's Private Information**

37. In the ordinary course of business, Quest collects, receives, stores, and maintains sensitive Private Information, including that of Plaintiff and Class members.

38. The Private Information collected and maintained by Quest includes information that is highly sensitive and valuable to cybercriminals. Quest derives substantial economic benefit from collecting, storing, and using this information in connection with its business operations and services.

39. Quest could not effectively conduct its business without collecting and maintaining the Private Information from Plaintiff and Class members.

40. By collecting, storing, and maintaining the Private Information of Plaintiff and Class members, Quest assumed legal and equitable duties to safeguard and protect that information from unauthorized access, disclosure, and misuse.

41. Quest knew or should have known that Plaintiff and Class members entrusted Quest with their Private Information with the reasonable expectation that it would be kept confidential, used only for legitimate business purposes, and protected through reasonable and adequate cybersecurity measures.

42. Plaintiff and Class members took reasonable steps to protect the confidentiality of their Private Information and relied on Quest to implement appropriate administrative, technical, and physical safeguards to secure their information.

43. The Data Breach was foreseeable and preventable. Quest was aware or should have been aware of the risk that it was a likely target for a cyberattack, given the substantial increase in cyberattacks and/or data breaches in recent years, particularly in the health care industry,

44. Between January and mid-June 2026, according to the U.S. Health and Human Services Office for Civil Rights, at least 19 million individuals had their PHI exposed or compromised by data breaches at healthcare institutions ranging

from small hospitals to large healthcare and healthcare management and other service providers.

45. In light of past high-profile data breaches at leading healthcare companies in recent years, as reported by the HIPAA Journal—including, for example, Conduit Business (62 million people, 2025), Davita (2.7 million patients, 2025) Aflac (14 million patients, 2025); Change Healthcare (192 million people, 2024), Kaiser Foundation Health Plan (13.4 million patients, 2024), Centers for Medicare & Medicaid Services (3,1 million patients, 2024), HCA Healthcare (11 million patients, July 2023), Managed Care of North America (8.8 patients, March 2023), Shields Health Care Group (2 million patients, March 2022), Broward Health (1.3 million patients, January 2022), OneTouchPoint (2.6 million patients, July 2022), Trinity Health (3.3 million patients, May 2020)—Quest knew or reasonably should have known that the Private Information it collected and maintained would be vulnerable to and targeted by cybercriminals.

46. Indeed, as early as 2014, the FBI warned healthcare and medical device entities like Quest that they were being targeted by cybercriminals, counseling that "[t]he FBI has observed malicious actors targeting healthcare related systems, perhaps for the purpose of obtaining the Protected Healthcare Information (PHI) and/or Personally Identifiable Information (PII)." The agency issued another warning in 2019.

47. Quest could have prevented or materially reduced the risk of the Data Breach by implementing reasonable cybersecurity measures, including adequately securing and encrypting systems and databases containing Plaintiff's and Class members' Private Information.

48. Quest's failure to adequately safeguard Plaintiff's and Class members' Private Information was exacerbated by the well-known and increasing risk of cyberattacks, as well as repeated public warnings, industry guidance, and regulatory alerts concerning the need to protect sensitive personal information from unauthorized access and disclosure.

### D. The Value of Private Information and the Effects of Unauthorized Disclosure

49. Quest is aware that the Private Information which it acquires is highly sensitive and of significant value to those who would use it for wrongful, nefarious purposes.

50. Quest also knew that a breach of its computer systems, and exposure of the Private Information therein, would result in the increased risk of identity theft and fraud against the individuals whose Private Information was compromised.

51. The Private Information of individuals remains of high value to criminals, as evidenced by the prices they will pay through the dark web.

52. Numerous sources cite dark web pricing for stolen identity credentials.[7] For example, Private Information can be sold at a price ranging from $40 to $200.[8] Criminals can also purchase access to entire company data breaches from $900 to $4,500.[9]

53. Identity thieves use stolen Private Information for a variety of crimes, including credit card fraud, phone or utilities fraud, tax fraud, insurance fraud, extortion, and bank/finance fraud.

54. Among other forms of fraud, identity thieves may obtain driver's licenses, government benefits, medical services, and housing or even give false information to police.

55. Victims of identity theft also often suffer embarrassment, extortion, or harassment in person or online, and/or experience financial losses resulting from fraudulently opened accounts or misuse of existing accounts.

---

7 Digital Trends, Your personal data is for sale on the dark web. Here's how much it costs (Oct. 16, 2019), *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Oct. 26, 2026).

8 Experian, Here's How Much Your Personal Information Is Selling for on the Dark Web (Dec. 6, 2017), *available at* https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/ (last visited Oct. 26, 2026).

9 VPNOverview, In the Dark (2019), *available at* https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/ (last visited Oct. 26, 2026).

56. Moreover, the fraudulent activity resulting from the Data Breach may not come to light for years. There may be a time lag between when harm occurs versus when it is discovered, and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office (" GAO") , which conducted a study regarding data breaches:[10]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

### E. Defendant Failed to Comply with Regulatory Requirements and Standards

57. Federal and state regulators have established security standards, issued guidance, and enacted laws governing the protection of sensitive personal information in order to prevent data breaches and mitigate the resulting harm to consumers.

58. Numerous federal and state laws, regulations, and industry standards require businesses that own, license, collect, store, or maintain Private Information to implement and maintain reasonable security procedures and practices designed to protect such information from unauthorized access, disclosure, and misuse.

---

[10] U.S. Gov't Accountability Office, Report to Congressional Requesters at 29 (Jun. 2007), *available at* https://www.gao.gov/assets/gao-07-737.pdf (last visited Oct. 26, 2026).

59. For example, at least twenty-four states have enacted laws specifically requiring entities maintaining the Private Information of state residents to employ reasonable safeguards and security measures to protect that information.

60. The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which identify best data security practices that businesses, such as Quest, should employ to protect against the unlawful exposure of Private Information. According to the FTC, the need for data security should be a factor in all businesses' decision-making.

61. In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*, which established cyber-security guidelines for businesses. The guidelines explain that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[11] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large

[11] FEDERAL TRADE COMMISSION, Protecting Personal Information: A Guide for Business (Oct. 2016), *available at* https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited Oct. 26, 2026).

amounts of data being transmitted from the system; and, have a response plan ready in the event of a breach.[12]

62. The FTC further recommends that companies not maintain Private Information longer than necessary for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

63. The FTC also directs businesses to provide immediate notification to individuals impacted by a data breach so that they can take measures to protect themselves.

64. Here, Quest has acted inexcusably by failing to provide timely notice to the individuals whose Private Information was compromised in the Data Breach, despite its knowledge of the incident and its obligations to safeguard such information.

65. Quest's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' Private Information constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

---

[12] *Id.*

66. Quest was at all times fully aware of its obligation to protect the Private Information entrusted to it. Quest was also aware of the significant repercussions that would result from the failure to do so.

**F. Defendant Failed to Comply with Industry Best Practices**

67. Various widely recognized cybersecurity industry best practices have been established to guide organizations in protecting sensitive data and mitigating the risk of unauthorized access and data breaches. For example, the Center for Internet Security ("CIS") has promulgated its Critical Security Controls, which identify common and prevalent cyber threats facing organizations and recommend baseline safeguards designed to defend against such threats. Organizations that collect and maintain sensitive Private Information, including Defendant, are widely recognized as being expected to follow such controls.

68. CIS also publishes CIS Benchmarks, which are widely used by auditors and security professionals as industry standards for securely configuring systems and establishing secure build practices for governance and cybersecurity programs.

69. Additional best practices include, at a minimum, implementing secure configuration of software and systems, maintaining robust access controls, timely identification and remediation of vulnerabilities, maintaining secure network infrastructure, encrypting sensitive data both at rest and in transit, and securing application software and related environments.

70. Quest failed to follow these widely accepted cybersecurity standards and industry best practices, thereby failing to adequately protect the Private Information of Plaintiff and Class members.

**G. Defendant Failed to Comply with HIPAA Guidelines**

71. Quest is a covered entity under HIPAA (45 C.F.R. § 160.102) and is required to comply with the HIPAA Privacy Rule and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and E ("Standards for Privacy of Individually Identifiable Health Information"), and Security Rule, 45 C.F.R. Part 160 and Part 164, Subparts A and C ("Security Standards for the Protection of Electronic Protected Health Information").

72. Quest is subject to the rules and regulations for safeguarding electronic forms of medical information pursuant to the Health Information Technology Act ("HITECH").[13] *See* 42 U.S.C. §17921, 45 C.F.R. § 160.103.

73. HIPAA's Privacy Rule or *Security Standards for the Protection of Electronic Protected Health Information* establishes national security standards for protecting health information that is kept or transferred in electronic form.

---

13 HIPAA and HITECH work in tandem to provide guidelines and rules for maintaining protected health information. HITECH references and incorporates HIPAA.

74. HIPAA requires "compl[iance] with the applicable standards, implementation specifications, and requirements" of HIPAA "with respect to electronic protected health information." 45 C.F.R. § 164.302.

75. HIPAA's Security Rule requires Quest to do the following:

a. Ensure the confidentiality, integrity, and availability of all electronic protected health information the covered entity or business associate creates, receives, maintains, or transmits;

b. Protect against any reasonably anticipated threats or hazards to the security or integrity of such information;

c. Protect against any reasonably anticipated uses or disclosures of such information that are not permitted; and

d. Ensure compliance by its workforce.

76. HIPAA also requires Quest to "review and modify the security measures implemented … as needed to continue provision of reasonable and appropriate protection of electronic protected health information." 45 C.F.R. § 164.306(e). Additionally, Quest is required under HIPAA to "[i]mplement technical policies and procedures for electronic information systems that maintain electronic protected health information to allow access only to those persons or software programs that have been granted access rights." 45 C.F.R. § 164.312(a)(1).

77. HIPAA and HITECH also obligated Quest to implement policies and procedures to prevent, detect, contain, and correct security violations, and to protect against uses or disclosures of electronic protected health information that are

reasonably anticipated but not permitted by the privacy rules. *See* 45 C.F.R. § 164.306(a)(1) and § 164.306(a)(3); *see also* 42 U.S.C. §17902.

78. The HIPAA Breach Notification Rule, 45 C.F.R. §§ 164.400-414, requires Quest to provide notice of the Data Breach to each affected individual "without unreasonable delay and in no case later than 60 days following discovery of the breach."[14]

79. HIPAA requires a covered entity to have and apply appropriate sanctions against members of its workforce who fail to comply with the privacy policies and procedures of the covered entity or the requirements of 45 C.F.R. Part 164, Subparts D or E. *See* 45 C.F.R. § 164.530(e).

80. HIPAA requires a covered entity to mitigate, to the extent practicable, any harmful effect that is known to the covered entity of a use or disclosure of protected health information in violation of its policies and procedures or the requirements of 45 C.F.R. Part 164, Subpart E by the covered entity or its business associate. *See* 45 C.F.R. § 164.530(f).

81. HIPAA also requires the Office of Civil Rights ("OCR"), within the Department of Health and Human Services ("HHS"), to issue annual guidance documents on the provisions in the HIPAA Security Rule. See 45 C.F.R. §§ 164.302-

---

[14] Breach Notification Rule, U.S. Dep't of Health & Human Services, *available at* https://www.hhs.gov/hipaa/for-professionals/breach-notification/index.html.

164.318. For example, "HHS has developed guidance and tools to assist HIPAA covered entities in identifying and implementing the most cost effective and appropriate administrative, physical, and technical safeguards to protect the confidentiality, integrity, and availability of e-PHI and comply with the risk analysis requirements of the Security Rule." US Department of Health & Human Services, Security Rule Guidance Material.[15] The list of resources includes a link to guidelines set by the National Institute of Standards and Technology (NIST), which OCR says "represent the industry standard for good business practices with respect to standards for securing e-PHI." US Department of Health & Human Services, Guidance on Risk Analysis.[16]

**H. Plaintiff's Experiences**

82. At all times relevant, Mr. Williams received medical services from Quest.

83. As a condition of receiving services from Quest, Mr. Williams was required to provide his Private Information to Quest.

---

[15] Security Rule Guidance Material, U.S. Dep't of Health and Human Services, *available at* http://www.hhs.gov/hipaa/for-professionals/security/guidance/index.html.

[16] Guidance on Risk Analysis, U.S. Dep't of Health and Human Services, *available at* https://www.hhs.gov/hipaa/for-professionals/security/guidance/guidance-risk-analysis/index.html.

84. Upon information and belief, Quest maintained Mr. Williams' Private Information in its systems at the time of the Data Breach.

85. Quest used Mr. Williams' Private Information to facilitate its business.

86. Mr. Williams provided his Private Information to Quest, either directly or indirectly, and trusted Quest would use reasonable measures to protect it according to Quest's internal policies, as well as state and federal law. Quest has a continuing legal duty and obligation to protect Plaintiff's Private Information from unauthorized access and disclosure.

87. Quest undertook a duty to act reasonably in its handling of Mr. Williams' Private Information. Quest, however, did not take reasonable care of Mr. Williams' Private Information, leading to its exposure and compromise as a direct result of Quest's inadequate data security measures.

88. Mr. Williams reasonably understood that Quest would provide adequate cybersecurity and protection of his Private Information.

89. Mr. Williams is very careful about sharing his sensitive Private Information. He stores documents containing Private Information in safe and secure locations. He has never knowingly transmitted unencrypted sensitive Private Information over the internet or any other unsecured source.

90. Since the Data Breach, Mr. Williams has received an increasing number of spam emails and phone calls.

91. Plaintiff has suffered actual injury from having his Private Information exposed as a result of the Data Breach, including: (a) increased spam emails and phone calls; (b) mitigation efforts to prevent the misuse of his Private Information; (c) damages to and diminution of the value of his Private Information, a form of intangible property that loses value when it falls into the hands of criminals who are using that information for fraud and publishing the information on the dark web; and (d) loss of privacy.

92. Once an individual's Private Information is offered for sale or otherwise made accessible on the Dark Web, cybercriminals can use the stolen and compromised Private Information to obtain additional personal information about the affected individuals and facilitate further identity theft, fraud, and other criminal activity.[17]

93. Given the sensitive nature of the information compromised in the Data Breach and the propensity of criminals to use such information to commit a wide variety of crimes, Mr. Williams faces a significant, present, and ongoing risk of scams, identity theft and fraud, and other identity-related fraud now and into the indefinite future.

---

[17] Ryan Toohil, What do Hackers do with Stolen Information, AURA (Sept. 5, 2023), *available at* https://www.aura.com/learn/what-do-hackers-do-with-stolen-information (last visited Oct. 26, 2026).

94. In addition, knowing that hackers have gained access to his Private Information and that this information likely has been and will be used in the future for scams, identity theft, fraud, and other nefarious purposes has caused Mr. Williams to experience significant frustration, anxiety, worry, stress, and fear.

**I. Plaintiff and Class Members Suffered Injury and Damages**

95. Given the sensitivity of the Private Information involved in this Data Breach, Plaintiff and Class members have all suffered injury and damages and will face a substantial risk of additional injuries for years to come, if not for the rest of their lives. Quest has done nothing to compensate Plaintiff or Class members for many of the injuries they have already suffered. Quest has not demonstrated any efforts to prevent additional harm from befalling Plaintiff and Class members as a result of the Data Breach.

96. Plaintiff's and Class members' Private Information was compromised as a direct and proximate result of the Data Breach.

97. Plaintiff and Class members have been damaged by the compromise of their Private Information in the Data Breach.

98. As a direct and proximate result of Defendant's conduct, Plaintiff and Class members have been placed at a present, imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

99. As a direct and proximate result of Quest's conduct, Plaintiff and Class members have been forced to spend time dealing with the effects of the Data Breach. Plaintiff and Class members have spent and will continue to spend significant amounts of time monitoring their accounts and sensitive information for misuse.

100. Plaintiff and Class members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, credit card fraud, and similar identity theft.

101. Plaintiff and Class members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

102. Plaintiff and Class members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on Plaintiff's and Class members' Private Information as potential fraudsters could use that information to more effectively target such schemes to Plaintiff and Class members.

103. Plaintiff and Class members also suffered a loss of value of their Private Information when it was compromised by cyber thieves in the Data Breach. Numerous courts have recognized the propriety of loss of value damages in similar cases.

104. Plaintiff and Class members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered ascertainable losses in

the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

a. Reviewing and monitoring sensitive accounts and finding fraudulent insurance claims, loans, and/or government benefits claims;

b. Purchasing credit monitoring and identity theft prevention;

c. Placing "freezes" and "alerts" with reporting agencies;

d. Spending time on the phone with or at financial institutions, healthcare providers, and/or government agencies to dispute unauthorized and fraudulent activity in their name;

e. Contacting financial institutions and closing or modifying financial accounts; and

f. Closely reviewing and monitoring bank accounts, and credit reports for unauthorized activity for years to come.

105. Moreover, Plaintiff and Class members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendant, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to, making sure that the storage of data or documents containing Private Information is not accessible and that access to such data is password protected.

106. Further, as a result of Quest's conduct, Plaintiff and Class members are forced to live with the anxiety that their Private Information may be disclosed to the entire world, thereby subjecting them to embarrassment and depriving them of any right to privacy whatsoever.

107. As a direct and proximate result of Quest's actions and inactions, Plaintiff and Class members have suffered anxiety, emotional distress, loss of time, loss of privacy, and are at an increased risk of future harm.

## V. CLASS ACTION ALLEGATIONS

108. Plaintiff brings this nationwide class action individually and on behalf of all other persons similarly situated pursuant to Federal Rule of Civil Procedure 23(a) and 23(b).

109. The Class that Plaintiff seeks to represent is defined as follows:

> **All natural persons, or if minors, their parents or guardians, residing in the United States or its territories whose Private Information was compromised in the Data Breach (the "Class").**

110. Excluded from the proposed Class are Quest, its subsidiaries and affiliates, officers, directors, and members of its officers' and directors' immediate families, any entity in which Quest has a controlling interest, the legal representatives, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of those judicial officers' immediate families or staffs.

111. Plaintiff reserves the right to modify or amend the definition of the proposed Class prior to moving for class certification.

112. This action may be certified as a class action because it satisfies the numerosity, commonality, typicality, adequacy, and superiority requirements of Federal Rule of Civil Procedure 23.

113. **Numerosity.** The Class described above is so numerous that joinder of all individual members in one action would be impracticable. The exact size of the Class and the identities of the individual members thereof are ascertainable through Quest's records, including, but not limited to, the files implicated in the Data Breach. Upon information and belief, the Class, at minimum, likely comprises thousands of individuals.

114. **Commonality.** This action involves questions of law and fact that are common to Plaintiff and the Class members. Such common questions include, but are not limited to:

- whether and to what extent Quest had a duty to protect the Private Information of Plaintiff and Class members;
- whether Quest was negligent in collecting and storing Plaintiff's and Class members' Private Information;
- whether Quest took reasonable steps and measures to safeguard Plaintiff's and Class members' Private Information;
- whether Quest breached its duties to exercise reasonable care in handling Plaintiff's and Class members' Private Information;
- whether Quest failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

- whether Quest failed to provide timely notice of the Data Breach to Plaintiff and the Class;
- whether Quest's conduct violated the statutes as set forth herein;
- whether Quest was unjustly enriched;
- whether Plaintiff and Class members are entitled to damages as a result of Quest's wrongful conduct; and
- whether Plaintiff and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

115. **Typicality.** Plaintiff's claims are typical of the claims of the Class members. The claims of Mr. Williams and unnamed Class members are based on the same legal theories and arise from the same failure by Quest to safeguard their Private Information.

116. **Adequacy of Representation.** Mr. Williams is an adequate representative of the proposed Class because his interests do not conflict with the interests of the other Class members he seeks to represent; Plaintiff has retained counsel competent and experienced in complex class action litigation; Plaintiff intends to prosecute this action vigorously; and Plaintiff's counsel has adequate financial means to vigorously pursue this action and ensure the interests of the proposed Class will not be harmed.

117. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the monetary damages suffered by individual

Class Members are relatively small, the expense and burden of individual litigation make it impossible for individual Class Members to seek redress for the wrongful conduct asserted herein. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

118. **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages is common to Plaintiff and each member of the proposed Class. If Defendant's breached its duties and released Plaintiff's and Class members' Private Information, then Plaintiff and each Class member suffered damages by that conduct.

119. **Ascertainability:** Members of the proposed Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Quest's  records.

## VI. CAUSES OF ACTION

**FIRST CLAIM FOR RELIEF**
**NEGLIGENCE**
**(On Behalf of Plaintiff and the Class)**

120. Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

121. Quest owed a duty under common law to Plaintiff and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting their Private Information in its possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

122. Specifically, this duty included, among other things: (a) designing, maintaining, and testing Quest's computer systems to ensure that Plaintiff's and Class members' Private Information in its possession was adequately secured and protected; (b) implementing processes that would detect a breach of their security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by their own security systems, regarding intrusions to their networks; and (d) maintaining data security measures consistent with industry standards.

123. Quest's duty to use reasonable care arose from several sources, including, but not limited to, those described below.

124. Quest had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiff and Class members were the foreseeable and

probable victims of any inadequate security practices on the part of Quest. By collecting and storing valuable Private Information that is routinely targeted by criminals for unauthorized access, Quest was obligated to act with reasonable care to protect against these foreseeable threats.

125. Quest also owed a common law duty because its conduct created a foreseeable risk of harm to Plaintiff and Class members.

126. Quest also knew or should have known of the inherent risk in collecting and storing massive amounts of Private Information, the importance of implementing adequate data security measures to protect that Private Information, and the frequency of cyber-attacks, such as the Data Breach.

127. Quest breached its duties owed to Plaintiff and Class members and thus was negligent. Upon information and belief, Quest breached these duties by, among other things: (a) mismanaging their system and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of Private Information; (b) mishandling its data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security

program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies; and (h) failing to adequately train and supervise employees and third-party vendors with access or credentials to systems and databases containing sensitive Private Information.

128. But for Quest's wrongful and negligent breach of its duties owed to Plaintiff and Class members, their Private Information would not have been accessed and compromised by cybercriminals.

129. As a direct and proximate result of Quest's negligence, Plaintiff and Class members have suffered injuries including:

a. theft of their Private Information;

b. costs associated with requesting credit freezes;

c. costs associated with the detection and prevention of identity theft;

d. costs associated with purchasing credit monitoring and identity theft protection services;

e. lowered credit scores resulting from credit inquiries following fraudulent activities;

f. costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

g. the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their Private Information being placed in the hands of criminals;

h. damages to and diminution in value of their Private Information entrusted to Defendants with the mutual understanding that Defendant would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and

i. continued risk of exposure to hackers and thieves of their Private Information, which remains in Defendant's possession and is subject to further breaches so long as Defendant fails to undertake appropriate and adequate measures to protect Plaintiff and Class members.

130. As a direct and proximate result of Quest's negligence, including its gross negligence, Plaintiff and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

**SECOND CLAIM FOR RELIEF**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

131. Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

132. Plaintiff and Class members conferred a monetary benefit on Quest by providing it with their valuable Private Information.

133. Quest knew that Plaintiff and Class members conferred a benefit upon it and accepted and retained that benefit by accepting and retaining the Private Information entrusted to it.

134. Under principles of equity and good conscience, Quest should not be permitted to retain the full value of Plaintiff's and Class Members' Private Information because Quest failed to adequately protect it. Plaintiff and the proposed

Class would not have provided their Private Information to Quest had they known Quest would not adequately protect their Private Information.

135. Plaintiff and Class members are without an adequate remedy at law.

136. As a direct and proximate result of Quest's conduct, Plaintiff and Class members have suffered injuries, including those identified above.

137. Plaintiff and Class members are entitled to restitution and/or damages from Defendant and/or an order proportionally disgorging all profits, benefits, and other compensation obtained by Defendant from its wrongful conduct, as well as return of their sensitive Private Information and/or confirmation that it is secure. This can be accomplished by establishing a constructive trust from which the Plaintiff and Class members may seek restitution or compensation.

**THIRD CLAIM FOR RELIEF**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

138. Plaintiff restates and realleges all preceding allegations above as if fully set forth herein.

139. Plaintiff and Class members entrusted their Private Information to Quest either directly or indirectly in connection with the services Quest provides. In so doing, Plaintiff and the Class entered into implied contracts with Quest, pursuant to which Quest agreed to safeguard and protect Plaintiff's and Class members' Private Information, to keep such information secure and confidential,

and to timely and accurately notify Plaintiff and the Class if their data had been breached or otherwise compromised.

140. At the time Defendant acquired the Private Information of Plaintiff and the Class, there was a meeting of the minds and a mutual understanding that Quest would safeguard the Private Information and not take unjustified risks when storing the Private Information.

141. Implicit in the agreements between Plaintiff and Class members and Quest was Quest's obligations to: (a) use Plaintiff's and Class members' Private Information for business purposes only; (b) take reasonable steps to safeguard their Private Information; (c) prevent unauthorized access and disclosure of the Private Information; (d) provide Plaintiff and Class members with prompt and sufficient notice of any and all unauthorized access and/or theft of their Private Information; and (e) retain the Private Information only under conditions that kept such information secure and confidential.

142. Plaintiff and Class members would not have entrusted their Private Information to Quest had they known that Quest would not encrypt sensitive data elements, or delete the Private Information that Defendants no longer had a reasonable need to maintain.

143. Plaintiff and Class members fully performed their obligations under the implied contracts with Quest.

144. Quest breached the implied contracts it made with Plaintiff and Class members by failing to safeguard and protect their Private Information, by failing to delete the information of Plaintiff and Class members once the relationship ended, and by failing to provide timely and accurate notice to them that their Private Information had been compromised in the Data Breach.

145. As a direct and proximate result of Quest's above-described breach of implied contract, Plaintiff and Class members have already suffered, and will continue to suffer, damages including, inter alia: (i) invasion of privacy; (ii) the compromise of their Private Information; (iii) actual and attempted misuse of the Private Information compromised in the Data Breach, including an increase in spam and phishing calls, texts, and emails; (iv) lost time, money, and opportunity costs associated with attempts to mitigate the actual consequences of the Data Breach; (v) lost or diminished value of their Private Information; (vi) loss of the benefit of their bargain; (vii) nominal damages; and (viii) the increased and continuing risk to their Private Information, which: (a) remains unencrypted and vulnerable to unauthorized access and abuse; and (b) remains backed up in Quest's possession and is subject to further unauthorized disclosures so long as Quest fails to undertake appropriate and adequate measures to protect the Private Information.

146. Plaintiff and Class members have suffered (and will continue to suffer): an ongoing and imminent threat of future identity theft crimes, fraud, and

abuse, resulting in monetary loss and economic harm; actual and attempted identity theft crimes, fraud, and abuse, resulting in monetary loss and economic harm; loss of the confidentiality of their Private Information; the illegal sale of the compromised data on the dark web; expenses and/or time spent on credit monitoring and identity theft insurance; time spent scrutinizing bank statements, credit card statements, and credit reports; expenses and/or time spent initiating fraud alerts, lost work time; and other economic and non-economic harm.

147. As a direct and proximate result of Quest's above-described breach of implied contract, Plaintiff and Class members are entitled to recover actual, consequential, and nominal damages to be determined at trial.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, pray for relief as follows:

A. For an order certifying the proposed Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel to represent the Class;

B. For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

C. For damages in an amount to be determined by the trier of fact;

D. For an order of restitution and all other forms of equitable monetary relief;

E. Declaratory and injunctive relief as described herein;

F. Awarding Plaintiff reasonable attorneys' fees, costs, and expenses;

G. Awarding pre- and post-judgment interest on any amounts awarded; and

H. Awarding such other and further relief as may be just and proper.

## VIII. JURY TRIAL DEMANDED

Plaintiff hereby demands a jury trial for all claims so triable.

Dated: October 27, 2026

Respectfully submitted,

*/s/ James Cecchi*

James Cecchi
Kevin Cooper
**CARELLA BYRNE CECCHI BRODY & AGNELLO P.C.**
5 Becker Farm Road
Roseland, NJ, 07068-1739
Telephone: (973) 994-1700
JCecchi@carellabyrne.com
kcooper@carellabyrne.com

Roberta D. Liebenberg
Gerard A. Dever
Jeffrey Gittleman
Jessica D. Khan
**FINE KAPLAN & BLACK**
One South Broad Street, Suite 2300
Philadelphia, PA 19107
Telephone: (215) 567-6565
rliebenberg@finekaplan.com
gdever@finekaplan.com
jgittleman@finekaplan.com
jkhan@finekaplan.com

Michele S. Carino
**GREENWICH LEGAL ASSOCIATES LLC**
881 Lake Avenue
Greenwich, CT 06831

Telephone: (203) 622-6001
mcarino@grwlegal.com
*Attorneys for Plaintiff and the Proposed Class*